IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CT-3030-BO

| | |
|---|---|
| RONALD S. BUTLER,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    O R D E R<br>) |
| TABOR CITY POLICE DEPARTMENT, et al.,<br>    Defendants. | )<br>) |

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. The suit relates to two separate events, one on November 6, 2007, in which plaintiff was tased by one of the defendants, and one on February 25, 2009, in which plaintiff was questioned by one of the defendants. On December 6, 2010, and February 14, 2011, plaintiff filed motions for appointment of counsel (D.E. # 12 and # 17). On January 27, 2011, defendants' filed a motion for summary judgment (D.E. # 13). Plaintiff responded to the motion, and the matter is ripe for determination.

## FACTUAL FINDINGS

On November 6, 2007, at approximately 6:00 a.m., defendant Timmy Oxendine, a former Tabor City Police Officer, was on duty. He received a call from dispatch about a vehicle trying to run another vehicle off the road in Tabor City. Officer Oxendine responded. Upon arrival at the scene, he saw plaintiff in front of a local restaurant. Plaintiff's vehicle was parked behind the vehicle of Tedith Prince in what appeared to be an attempt to block her in. Plaintiff was attempting to enter her vehicle at the driver's side door. The window of the driver's side door had been knocked out prior to Officer Oxendine's arrival.

Prince and her daughter then excited the car through the passenger side and moved towards the restaurant. Plaintiff followed and began striking Prince in the back. Officer Oxendine noticed a shiny object in plaintiff's hand. He thought the object was a knife. Officer Oxendine commanded plaintiff to stop at least three times, but plaintiff did not respond and continued his assault of Prince. Officer Oxendine deployed his Taser in an effort to stop the assault. "The barbs of the Taser struck Plaintiff on his lower back and Plaintiff immediately stopped and fell to the ground." Former Tabor City Police Chief Ronald Wooster observed the incident and offered his assistance to Officer Oxendine. The two placed plaintiff in handcuffs and brought plaintiff to his feet. The object mistaken for a knife was determined to be a long key. Officer Oxendine states in his affidavit that once plaintiff was handcuffed no additional force was employed.

EMS was called to the scene to remove the barbs of the Taser. Plaintiff refused EMS treatment, however, EMS did remove the barbs. Officer Oxendine placed plaintiff in his vehicle and begin to go to the magistrate office. Plainitff complained that his hand hurt, Officer Oxendine called the Police Department, and went to the hospital for treatment. Plaintiff alleges he suffered injury to his hand and underwent surgery.

Plaintiff was charged with assault on a female, assault with a deadly weapon, and a violation of a domestic violence protective order. He was also charged with damage to personal property for punching and breaking Prince's car window. In addition to these charges he also faced earlier charges of committing an assault on a female, committing a domestic criminal

2

trespass, and a violation of a domestic protective order from October 18, 2007. Plaintiff pled guilty to all of the charges and his probation was revoked.[1]

Plaintiff's version of the events is that he was having an argument with a friend, that "without a warning, saying that [Officer Oxendine] thought I had a knife" tased him. Plaintiff makes no indication as to how or when his hand was broken.

The second event plaintiff alleges is unrelated to the first. On February 25, 2009, Captain Dean Foley responded to a dispatch call for backup at the seen of a disturbance. The location was at an apartment complex. Upon his arrival to the scene, he was informed a young lady was missing. He was further informed she was last seen running from the apartment with plaintiff chasing her. During the investigation, Captain Foley found plaintiff in a nearby apartment and informed plaintiff he was being detained for question. Plaintiff was not arrested or transported from the area.

## DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1986). There is no issue for trial unless

---

[1] The court relies on the affidavit of Officer Oxendine to set out the factual allegations where plaintiff's factual allegations are very limited and do not contradict that of Officer Oxendine. For example, plaintiff does not state how he hurt his hand or when he hurt his hand. He also states he was in an argument with a friend, but provides not further detail. In plaintiff's response to the motion for summary judgment, he again does not dispute the facts as set out in the body of this order. His argument is that there are officers within the police department who have been investigated for criminal activity such as domestic violence. He provides newspaper articles about these officers. The officers are not part of this suit, or the facts surrounding these suits. The incidents are completely unrelated. The court notes he does provide one article related to Officer Oxendine about a car accident. No allegations of criminal culpability was suggested on the part of Officer Oxendine, nor did the article relate to the other articles.

there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 250. Furthermore, although the court is required to draw any inferences from the underlying facts which are favorable to the nonmovant, inferences may be drawn only from facts for which the nonmovant offers Rule 56 proof (rather than mere allegations); and must be reasonable in light of competing inferences to the contrary. See Sylvia Development Corp. v. Calvert County, 48 F.3d 810, 817-18 (4th Cir. 1995).

In support of the motion for summary judgment, defendant asserts the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. See Pearson v. Callahan, 555 U.S. 223, 236-238 (U.S. 2009); Siegert v. Gilley, 500 U.S. 226, 232 (1991); Rogers, 249 F.3d at 286.[2]

To begin, the Tabor City Police Department is not a distinct legal entity capable of being sued. In Parker v. Bladen County, 583 F.Supp.2d 736 (E.D.N.C. June 27, 2008), the court held:

> State law dictates whether a [state] governmental agency has the capacity to be sued in federal court." Efird v. Riley, 342 F.Supp.2d 413, 419–20 (M.D.N.C.2004) ( citing Avery v. Burke, 660 F.2d 111, 113–14 (4th Cir.1981)). For example, N.C. Gen.Stat. § 153A–11 acknowledges that a county is a legal entity which may be sued. However, there is no corresponding statute authorizing suit against a North Carolina county's sheriff's department.

---

[2]In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194 (2001). *See Pearson*, 555 U.S. at 236.

Parker, 583 F.Supp.2d at 740.

Likewise, there is no North Carolina statute authorizing suit against a specific police department. See, Moore v. City of Asheville, NC, 290 F.Supp.2d 664, 673 (W.D.N.C. November 13, 2003), aff'd, 396 F.3d 385 (4th Cir.2005)("under North Carolina law, the Asheville Police Department is not a 'person' and, therefore, lacks the capacity to be sued"). even if Tabor City Police Department was capable of being sued, "a municipality is only liable ... [for a deprivation of federal rights] if it causes such deprivation through an official policy or custom." Carter v. Morris, 164 F.3d 215, 218 (4th Cir.1999)( citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690–691, 98 S.Ct. 2018, 56 L.Ed.2d 611). Conversely, a municipality cannot be held liable for such a deprivation on a respondeat superior theory. Id. Plaintiff has failed to allege that defendant's policy, custom or practice caused a violation of her federal rights. Likewise, to the extent plaintiff's Complaint could be construed to assert any state tort claims, defendant is immune from suit. Plaintiff's Complaint does not allege, nor is there any evidence that defendant Tabor City Police Department has waived its sovereign immunity. See Reid v. Town of Madison, 137 N.C. App. 168, 527 S.E.2d 87, 89 (N.C. App. March 21, 2000).

Secondly, in the case at hand, the court finds that Butler is alleging excessive force in both the November 6, 2007, arrest and February 25, 2009, investigation. Butler was neither a prisoner nor pre-trial detainee. Therefore under the Supreme Court's ruling in Graham v. Connor, we must review Butler's excessive force claim under the Fourth Amendment and its "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). As the Court stated in Graham,

"[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985) (internal quotation marks omitted)). Because such a test does not lend itself to a bright line rule, we must take into consideration the "totality of the circumstances" when assessing the reasonableness of force used by an officer. Garner, 471 U.S. at 8-9. In doing so, we view the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. "The extent of the plaintiff's injury is also a relevant consideration." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003).

In this matter, plaintiff had been reported to have chased his victim in his car. He had continued the chase into a parking lot where it appeared he had blocked the car. Upon arrival at the scene, the officer saw a man attempting to reach his victim who was in her car. The victim and her daughter existed the passenger car door. Thereafter, plaintiff was assaulting this woman as she ran through the parking lot of a local restaurant in Tabor City, North Carolina. The officer witnessed the ongoing assault. Plaintiff's continued assault occurred in the presence of the woman's daughter as well. Plaintiff's continued assault occurred after the officer verbally commanded him to stop the assault. Plaintiff had physically damaged Prince's car in an apparent attempt to reach Prince. The officer believed plaintiff had a weapon. After the verbally request to stop failed three times, the evidence is that the officer used the Taser on plaintiff one time. Thereafter, plaintiff was handcuffed. The court shall assume plaintiff's hand was broken in the altercation with the arresting officer, while it is just as likely it was broken from the assault on his victim or the breaking of the car glass. Plaintiff makes no allegation of how or when his hand

Case 5:10-ct-03030-BO   Document 20   Filed 07/26/11   Page 6 of 8

6

was broken. The court finds that the force used in the incident was objectively reasonable under the totality of the circumstances and Oxendine is cloaked with qualified immunity.

As for the second incident, no allegations are before the court that Captain Foley personally deprived plaintiff of any constitutional right, and at most detained plaintiff during the course of an investigation. If plaintiff is attempting to contend that these facts violated his Fourth Amendment right to be free from unlawful seizures, he is incorrect. Terry v. Ohio, 392 U.S. (1968), holds that police officers may briefly detain an individual if they have a reasonable suspicion, based on articulable facts, that "criminal activity may be afoot." 392 U.S. at 30, 88 S.Ct. 1868. "[R]easonable suspicion" is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," but requires "more than an inchoate and unparticularized suspicion or hunch." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (internal quotations and citations omitted).

In an abundance of caution, the court also reviews an allegation that plaintiff was shot in the foot by another individual, Tarence Rowell. Tarence Rowell is not an officer, but a private citizen. Tarence Rowell is not named as a defendant. Plaintiff alleges that Detective Blake Porter investigated, but would not issue, a warrant. He also alleges the grand jury did not issue a warrant. Detective Porter is not a named defendant and no factual allegations or issues are properly before this court.

Similarly, plaintiff alleges that he slipped and fell while incarcerated after his arrest on November 6, 2007, and hurt his arm/hand allegedly hurt in the arrest. These allegations do not indicate that plaintiff was exposed to a substantial risk of serious harm or that he was denied the minimal civilized measure of life's necessities sufficient to rise to the level of a constitutional deprivation. See e.g., Mitchell v. City of New York, 2010 WL 3734098, at *3 (S.D.N.Y.2010)

(quoting Jennings v. Horn, 2007 WL 2265574, at *5 (S.D.N.Y. Aug. 7, 2007)) (concluding that the complaint "fail[ed] to establish that the wet floor posed a substantial risk of serious harm, because 'slippery prison floors, at best, pose a claim of negligence, which is not actionable under the United States Constitution.' "). The claim is dismissed.

Accordingly, defendants' motion for summary judgment is ALLOWED (D.E. # 13). Having so determined, all other pending motions are DENIED as moot (D.E. # 12 and 17). The Clerk is DIRECTED to close the case.

SO ORDERED, this the 25 day of July 2011.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE